NORTHERN DISTRICT OF TEXAS
FILED

SEP 2 7 2018

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL QUINCY WHITE,     §
                              §
           Petitioner,    §
                              §
v.                             §      No. 4:17-CV-465-A
                              §
LORIE DAVIS, Director,    §
Texas Department of Criminal   §
Justice, Correctional      §
Institutions Division,     §
                              §
          Respondent.    §



## MEMORANDUM OPINION
## and
## ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Michael Quincy White, who
was confined in the Correctional Institutions Division of the
Texas Department of Criminal Justice (TDCJ) at the time the
petition was filed, against Lorie Davis, director of TDCJ,
respondent. Petitioner has been released on parole. After having
considered the pleadings, state court records, and relief sought
by petitioner, the court has concluded that the petition should
be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

On January 17, 2012, in Tarrant County, Texas, Case No.
1237626D, pursuant to a plea agreement, petitioner pleaded guilty
to felony driving while intoxicated and the trial court adjudged
him guilty and sentenced him to 10 years' confinement, which the

court suspended and placed him on ten years' community supervision. (Clerk's R. 28-35, 37-42, 45-48.) On January 21, 2015, the state moved to revoke his community supervision based on certain violations of the conditions of his release. (Id. at 49-51.) At the revocation hearing on July 2, 2015, petitioner signed written plea admonishments regarding his constitutional rights and his waiver thereof, wherein he acknowledged that he was aware of the consequences of his plea; that he was mentally competent and his plea was knowingly, freely, and voluntarily entered; that no one threatened, coerced, forced, persuaded or promises him anything in exchange for his plea; that he was totally satisfied with the representation given to him by counsel and counsel provided "fully effective and competent representation; that neither the trial court or his counsel made any representation about the disposition of the hearing or the actual time he would serve upon revocation; and that the court could sentence him anywhere from the minimum of the range of punishment up to and including the amount of time in his original sentence. (Id. at 52-53.) His trial counsel signed the written plea admonishments indicating that he was satisfied that petitioner "intelligently, knowingly, and voluntarily waived his rights" and would enter his plea "understanding the consequences thereof." (Id. at 54.) And, the trial court found the plea to be "intelligently, freely, and voluntarily entered[,]" accepted it

in open court, and assessed petitioner's sentence at 10 years' confinement in TDCJ. (Id. at 54, 56.)

Petitioner appealed the judgment revoking his community supervision, but the state appellate court affirmed the judgment. (Mem. Op. 2, 6.) Petitioner also sought postconviction state habeas relief by filing two state habeas-corpus applications. The first was dismissed because it was filed before the appellate court issued its mandate and the second was denied by the Texas Court of Criminal Appeals on February 15, 2017, without written order on the findings of the trial court. This federal petition followed. (SHR01 Action Taken; SHR02 Action Taken.[1])

## II. ISSUES

Petitioner raises two grounds for relief, alleging that he was denied a hearing on his state habeas application and that he received ineffective assistance of trial counsel. (Pet. 6.)

## III. RULE 5 STATEMENT

Respondent does not allege that the petition is barred by successiveness, the federal statute of limitations, or a failure to exhaust state court remedies. (Resp't's Answer 4.)

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and

---

[1] "SHR01" refer to the record of petitioner state habeas proceeding in WR-83,918-01; "SHR02" refers to the record of his state habeas proceeding in WR-83,918-02.

Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011).

The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000). Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular

4

reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

### A. Evidentiary Hearing

Under his first ground, Petitioner claims he is entitled to an evidentiary hearing in this court to further develop his ineffective-assistance-of-counsel claims because he was denied relief on his state habeas application "at the appeal level without a written order or hearing." (Pet. 6.)

A habeas petitioner is entitled to an evidentiary hearing in federal court if he shows that (1) there is a factual dispute which, if resolved in his favor, would entitle him to relief and (2) the state has not afforded him a full and fair hearing. *Murphy v. Johnson,* 205 F.3d 809, 815, 816 (5th Cir. 2000). An evidentiary hearing is required when the federal court lacks sufficient undisputed facts to make an informed decision. *See Barrientes v. Johnson,* 221 F.3d 741, 770 (5th Cir. 2000).

Having examined the state court records, petitioner fails to demonstrate that he was denied a full and fair hearing in state court simply because the Texas Court of Criminal Appeals ruled on his second state habeas application without conducting a live evidentiary hearing. A full and fair hearing in state court does

5

not necessarily require live testimony. The Fifth Circuit has repeatedly held that a paper hearing is sufficient to afford a habeas petitioner a full and fair hearing on the factual issues underlying his claims, especially where as here, the trial court and the state habeas court are one and the same. *See Murphy,* 205 F.3d at 816.

In this case, the record adequately supports the state habeas court's findings. Counsel's affidavit, *see infra,* sets forth in great detail the actions he undertook in his representation of petitioner and counsel's averments were uncontradicted by petitioner, who tends to make broad and general allegations unsupported by anything in the record. The merits of all factual disputes were sufficiently resolved in the state habeas court's paper hearing, the factfinding procedure employed by the state court was adequate to afford a full and fair hearing, and the material facts were adequately developed at the state court hearing. Thus, absent clear and convincing evidence in rebuttal, the court is entitled to give, and does give, the presumption of correctness to state court's factual findings in considering petitioner's ineffective-assistance-of-counsel claims below. Petitioner is not entitled to relief under his first ground.

## B. Ineffective Assistance of Counsel

Under his second ground, petitioner claims that his trial

counsel was ineffective during the revocation proceedings. (Pet. 6.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial.[2] U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where,

---

[2]Respondent asserts that, although there is a limited right to counsel in a parole revocation context, there is no United States Supreme Court authority establishing that petitioner was entitled to *effective* assistance of counsel at his probation revocation. (Resp't's Answer 9-10.) The court does not find this argument persuasive. *See Mempa v. Rhay*, 389 U.S. 128, 137 (1967). *See also McConnell v. Rhay*, 393 U.S. 2, 34 (1968) (holding the right to counsel at revocation of "probation and deferral or suspension of sentences" must "be treated like the right to counsel at other stages of adjudication"). The right to counsel implies a right to the effective assistance of counsel.

as here, the state court adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101, 105.

Petitioner was represented during the revocation proceedings by John C. Beatty, licensed to practice law in Texas since 1975 and board certified in criminal law. (SHR02 72.) Petitioner raises largely the same complaints about counsel's representation as those raised in his state habeas proceeding. Thus, the court reviews the petitioner's complaints as set forth by the state habeas court:

a.  Counsel did not clearly and confidentially explain the hearing procedure as an open plea or the finality of the consequences;

b.  Counsel proceeded carelessly, lacking prudent zeal and seemingly unconcerned as to the consequences of the hearing;

c.  Counsel was unprepared and uninformed;

d.  Counsel failed to gather relevant facts and thoroughly review the file;

e.  Counsel failed to have any strategy;

f.  Counsel failed to project a viable defense;

g.  Counsel failed to go over the questions before

putting him on the stand;

h.  Counsel failed to advise [petitioner] of the chances of success;

i.  Counsel failed to have further discussions with the probation supervisors to assess the source of [petitioner]'s issues;

j.  Counsel failed to advise [petitioner] that a plea offer was available nor did he attempt to acquire one;

k.  Counsel failed to request a plea offer;

l.  Counsel failed to present any seriously effective mitigation defense;

m.  Counsel failed to obtain case information from [petitioner]'s Dallas attorney;

n.  Counsel failed to mention [petitioner]'s transportation issues in detail;

o.  Counsel failed to object or request a new trial;

p.  Counsel failed to meet with [petitioner] privately;

q.  Counsel placed his paying clients over [petitioner]'s case; and

r.  Counsel spent very little time on [petitioner]'s case because counsel was not paid his normal fees.

(SHR02 136-37.)

In response to both petitioner's grievance against counsel with the State Bar of Texas and petitioner's allegations in his state habeas application, counsel averred (all errors in punctuation are in the original):

On January 17, 2012 [petitioner] was convicted of felony Driving While Intoxicated, having previously been convicted of DWI twice before. After finding

[petitioner] guilty, the court assessed his punishment at 10 years confinement in [TDCJ], but probated the imposition of the 10 year sentence for a probationary term of 10 years, . . . . To avoid a 10 year prison term, [petitioner] was ordered to follow the standard rules of probation. Note: I did not represent [petitioner] in that matter.

On January 21, 2015 the State filed a Motion to Revoke Probated Sentence, alleging a variety of violations . . . .

On June 12, 2015 I was appointed to represent [petitioner] on the revocation matter.

On July 2, 2015 a revocation hearing was conducted. [Petitioner] admitted all violations alleged were true. He elected to testify. In so doing he offered a variety of explanations, excuses and rationalizations seeking to rectify his violations. Thereafter, the court found that [petitioner] had indeed violated his probationary rules and imposed the 10 year sentence the court had previously set.

On June 12, 2015, the day I was appointed, I immediately met with [petitioner]. We reviewed the Motion To Revoke Probation together. He informed me that all the alleged violations were true, yet he felt like the violations were somewhat trivial, easily explained and certainly were too insignificant to justify revoking his probation.

After my initial meeting with [petitioner], I met with a representative of the Tarrant County Adult Probation Department and reviewed [petitioner]'s file. The file did substantiate all violations alleged, as well as revealing 4 sanctions issued by the Adult Probation Department for days in jail [petitioner] had been required to serve for various shortcomings while on probation . . . .

Additionally, and importantly, the file revealed that [petitioner] had been arrested on January 17, 2015 for a new felony; to wit, Aggravated Assault in Dallas County, Texas. . . .

I again met with [petitioner] and referenced the Aggravated Assault case. [Petitioner] indicated it was

not a problem, a simple misunderstanding between him and a woman which represented no real reason for concern. I told [petitioner] that I appreciated his optimism; however, it was worthy of some alarm.

[Petitioner] advised that he had been incarcerated in Dallas County from January 17, 2015 until his recent transfer to Tarrant County. [Petitioner] and I discussed whether I should tell the District Attorney about this period of incarceration in Dallas County. It would certainly explain why he was unable to report to the Probation Department for SOME of the months he failed to report. That said, knowledge of this new felony charge in Dallas could cause the Tarrant County District Attorney to amend their motion To Revoke and allege this new charge as yet another violation. [Petitioner] found himself uncomfortably perched on the horns of a true dilemma. After we weighed the pros and cons of this, [petitioner] instructed me to provide this information to the State to explain some of his months of not reporting and seek reinstatement of his probation. He again reminded me that the new indictment in Dallas was nothing more than a nuisance.

I explained the Dallas matter to the prosecutor. She was not impressed. I proposed that the State dismiss the Motion To Revoke and agree to recommend reinstatement. She declined. I told [petitioner]. He was not happy.

I explained to [petitioner] that based on my review of his probation file, as well as my conversations/ negotiations with both the Probation Department and the District Attorney, he needed to understand that they were adamant in seeking to revoke his probation. There was to be no easy solution of the prosecutor surrendering as [petitioner] proposed.

I further explained that he had no right to a jury trial, but he did have the absolute right to have a hearing before the judge and seek reinstatement. He could make this plea to the court even though his violations were in fact true. I likened the judge to a tie-breaker. Since we could not reach an agreed result with the prosecutor, the judge would decide who won.

I further explained that under the circumstances it might be prudent for me to propose a compromise (plea

bargain) to the prosecutor for revocation of probation,
but a reduced term of years in prison ranging from 2 –
10 years. [Petitioner] was upset at such a suggestion.

He indicated that he was interested in only one result—
reinstatement and no prison term. I stressed the only
possible way he could achieve this was by having a
hearing, in which he would win or lose. He opted for a
hearing. As promulgated by Rule 1.02, I abided by his
decision.

We recessed for the day. Thereafter, I reviewed his
file a second time, obtained records from Dallas County
confirming his incarceration there. I also spoke with
his attorney in Dallas County regarding his pending
indictment in Dallas.

Prior to the revocation hearing set for July 2, 2015, I
spoke again to both the prosecutor and the probation
officer regarding reinstatement. They each remained
steadfast.

Prior to [petitioner]'s hearing, I again reviewed his
violations with him and the variety of explanations he
would offer the court for his noncompliance. I
explained that he could not be forced to testify, but
he was of course free to do so, subject to cross-
examination. I explained he did not have to admit his
violations, which would require the prosecutor to prove
them.

As is often the case, when I again attempted to stress
to [petitioner] that he needed to grasp the severity of
his situation which could indeed result in imposition
of the 10 year sentence previously set by the court, he
voiced clear displeasure with me personally, as well as
my representation. In short, I was "working for the
man, not him". We reviewed the requisite Plea
Admonitions . . . together prior to the hearing. I
explained the document in understandable terms, as I
acknowledged by my signature on the document. He voiced
no questions about the admonitions given. He signed the
Plea Admonishments, indicating that he understood same.
He signed the Judicial Confession admitting the
violations alleged. Additionally, please note Paragraph
H on Page 2 of the Plea Admonitions, wherein
[petitioner] acknowledged he was "totally satisfied
with the representation given to me by my attorney".

## The Hearing

To assist me in this response . . ., I enclose a transcript of [petitioner]'s hearing. In your review of same, please note that [petitioner] acknowledged that he had ample opportunity to discuss the motion with me and was satisfied he had provided me sufficient information to offer his explanations to the court for consideration, in an effort to seek reinstatement.

## Directive To Address Specifically
## Each Grievance Allegation

I have attempted to provide a coherent response to the various complaints raised by [petitioner]. Having said that, so as not to contravene the directive to address each allegation directly, I:

a. deny that I "fail[ed] to show interest" in the case and/or was "totally unprofessional". I noted [petitioner]'s collection of excuses for having violated probation and sought reinstatement from both the probation department and the prosecutor. When those negotiations failed to achieve reinstatement by agreement, I assisted [petitioner] as best I could to seek reinstatement from the court.

b. deny that I "failed to obtain a plea bargain offer". The only "plea bargain offer" that [petitioner] would accept was reinstatement. I simply could not make the prosecutor and probation officer do what [petitioner] wanted them to do. Furthermore, [petitioner] had no legal right to have the prosecutor abandon the revocation motion, or offer a compromise of a term of years less than the 10 previously set by the judge. [Petitioner] confuses "failure to obtain a plea bargain offer" with both the prosecutor's and probation officer's unwillingness to disregard his violations, recommend reinstatement to the court and, succinctly, do it [petitioner]'s way. The only "plea bargain" [petitioner] would accept from the state was capitulation.

c. deny that I failed to explain what an "open plea" was and that it was "final". I explained that the only way to possibly obtain reinstatement was to leave it up to the judge. Since the prosecutor and probation officer would not agree to reinstate, the judge would

determine the result. The judge could either reinstate, assess the 10 years previously set, or he could reduce the sentence to a term between 2 and 10 years. I explained that at the conclusion of the hearing, which was called an open plea, the judge would announce his decision. He would in effect say who won. I explained how the hearing works, who went first, that I would ask him questions designed to help him get his explanations before the court, that the hearing was question and answer, not just a casual, narrative between him and the court, that he would be cross-examined by the prosecutor and that he should not loose his temper, stand up when the judge talked to him, etc. I explained all of that to [petitioner]. As to finality, I explained that after the judge announced his decision, the judge would then tell [petitioner] whether he could appeal, or not. I explained what an appeal was. . . .

d. deny that I failed to inform [petitioner] of "the possibility of a maximum sentence". Please see written Plea Admonishments, page 1, "you face the following range of punishment 2-10 IDTDCJ, 0-10,000 fine". How much more clear could it be? Also, this accusation was further addressed in paragraph c. above.

e. deny that I misled him into having a false sense of hope, specifically, "knowing all allegations were true, [counsel] acted as if reinstatement was possible, so I was obeying his guidance". [Petitioner] reverses our roles in lodging this complaint. The only way that [petitioner] could possibly get the one result he would accept was by having a hearing, an open plea, and convincing the judge to forgive his violations and allow him to remain on probation. I explained that in my opinion he needed to recognize that his performance on probation was less than stellar. I encouraged him to apologize to the judge, ask forgiveness, be contrite and earnestly promise to do better if given the chance. [Petitioner] chose to attempt this task. We tried, he lost and this became my fault, not his.

f. deny that I knew the result the hearing would produce; specifically, "[counsel] would allow the open plea to proceed without knowing the outcome would be in [petitioner]'s favor". While this accusation that I have the clairvoyance allowing me to know a result before an event has occurred is flattering, it is also preposterous.

14

g. deny that I "planned this path for [petitioner]' and was "deceptive". The path that led [petitioner] to the doors of the penitentiary was created by him, not me. Had his path of probationary transgressions been shorter or less riddled with potholes, he might have prevailed. As to the charge that I was deceptive, I find that a scurrilous character attack, and nothing more.

## Conclusion

Hopefully my responses address each accusation with sufficient clarity and specificity. If further explanation or clarification is desired, I stand ready to further reply, or appear, as the case may be.

(SHR02 72-75 (record citations omitted).)

Finding counsel's affidavit credible and supported by the record, the state habeas court entered findings of fact, too numerous to list here, consistent with the affidavit and, applying the *Strickland*, concluded that petitioner had failed to prove either prong of the *Strickland* standard. (Id. at 138-43, 144-47, 151.)

As an initial matter, respondent asserts that petitioner's knowing and voluntary pleas of true waived his ineffective-assistance-of-counsel claims, none of which attack the voluntary nature of the plea. (Resp't's Answer 10-15.) It is well settled that a guilty plea, if made knowingly and voluntarily, waives all nonjurisdictional defects in the proceeding preceding the plea, including ineffective-assistance-of-counsel claims that do not affect the voluntary nature of the plea. *See United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir. 2000); *Smith v. Estelle,* 711

15

F.2d 677, 682 (5th Cir. 1983). Similarly, courts in this and other districts in Texas have found that a plea of true to probation violations, if entered knowingly and voluntarily, likewise results in the waiver of all nonjurisdictional defects in the proceedings, including ineffective-assistance claims that do not implicate the voluntariness of the plea. *See Brazill v. Director, TDCJ–CID,* No. 1:14cv97, 2016 WL 7744734, at *2-3 (E.D.Tex. Nov. 22, 2016); *Henley v. Quarterman,* No. 3:06-CV-0237-P, 2007 WL 2890372, at *3 (N.D. Tex. Sep. 28, 2007) (citing cases); *Whitten v. Cockrell,* No. 3:01-CV-1487-D, 2003 WL 21509163, at *7-8 (N.D.Tex. Apr.11, 2003). *See also United States v. Alvarez,* 197 Fed. App'x 341, 2006 WL 2547768, at * (5th Cir. Sep. 5, 2006) (providing "admissions of violations of the conditions of probation waived [petitioner's] due process protections").

To the extent petitioner's claims, including his claim raised for the first time in this federal petition that counsel coerced his pleas of true, relate to the voluntariness of his pleas, the plea documents provided petitioner with written admonitions regarding his rights and show that he expressly waived such rights by pleading true to the revocation allegations. (SHR02 52-54.) The record reflects that petitioner had a clear understanding of the proceedings against him, the nature of the alleged probation violations, and the consequences

of entering his pleas of true. Petitioner has not overcome the presumption of regularity and "great weight" accorded state court records. *See Bonvillian v. Blackburn,* 780 F.2d 1248, 1252 (5th Cir.1986) (holding that state court records are accorded "great weight"); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state court records are entitled to a "presumption of regularity"). His assertions of coercion and ignorance as to the consequences of his pleas, after the fact, are unsupported by the record and contrary to his confirmation in the written plea admonishments. Deferring to the state court records and the state habeas court's factual findings that counsel reviewed the plea admonishments with petitioner; that counsel properly advised petitioner of the possible outcomes and the range of punishment he faced upon revocation; and that counsel's advice was the result of reasonable trial strategy, the court finds no evidence that petitioner's pleas were coerced or that counsel performed deficiently with respect to petitioner pleading true. Consequently, petitioner's ineffective-assistance claims involving counsel's acts or omissions preceding the plea are waived.

To the extent petitioner's ineffective-assistance claims involve counsel's acts or omissions following the plea, the claims are groundless. Relying on the presumptive correctness of the state courts' factual findings, and having independently

17

reviewed petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland.* Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"). Consequently, petitioner is not entitled to relief under his second ground.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED September 2 7 , 2018.

JOHN McBRYDE
UNITED STATES DISTRICT JUDGE

18